UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JORGE LUIS SEVILLA and REYNA TELLO, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-3594-B |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, BANK OF AMERICA, N.A., and SETERUS, INC., | § § § § | |
| Defendants. | § § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants Federal National Mortgage Association (Fannie Mae) and

Seterus, Inc.'s (collectively Defendants) Motion for Judgment on the Pleadings (Doc. 14). For the

reasons set forth below, the Motion is **GRANTED**.

I.

BACKGROUND[1]

This case arises out of a dispute regarding the foreclosure of Plaintiffs' property. On April 5,

2007 Plaintiffs Jorge Luis Sevilla and Reyna Tello purchased property located at 2660 Windswept

Lane, Mesquite, Texas 75118 (Property). Doc. 1-1, Pls.' Compl. ¶ 12; Doc. 1-1, Special Warranty

Deed, Ex. A. To make the purchase, Plaintiffs executed a promissory note (Note) with Bank of

---

[1] The Court draws its factual account from the allegations contained in Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction and Request for Disclosure. Doc. 1-1 [hereinafter Pls.' Compl.]. The Court also draws from Defendants' briefing on their Motion before the Court. Any contested facts are noted as such.

America, N.A. (BANA) with an original principal amount of $142,900.00. *Id.* ¶ 13. To secure the Note, Plaintiffs executed a deed of trust (DOT) the next day. *Id.* ¶ 13; Doc. 1-1, Deed of Trust, Ex. B.

Several years later a Corporation Assignment of Deed of Trust (Assignment of DOT) was filed in the Dallas County records that indicates Countrywide Home Loans, Inc. (Countrywide) assigned the DOT on Plaintiffs' Property to Fannie Mae in October 2011. Doc. 1-1, Assignment of DOT, Ex. C. This Assignment of DOT creates the basis for most of Plaintiffs' claims. Plaintiffs argue that it must be void because there is no record of BANA assigning the DOT to Countrywide, so Countrywide could not have the authority to then assign it to Fannie Mae. Doc. 1-1, Pls.' Compl. ¶ 17. Essentially, Plaintiffs point to a gap in the chain of assignment.[2]

Based on the Assignment of DOT, Plaintiffs allege that in May 2012 Seterus, acting as mortgage servicer for Fannie Mae, executed an Appointment of Substitute Trustee instrument that replaced the original trustee named in the DOT. *Id.* ¶ 21. Plaintiffs further claim that Seterus filed the same instrument again in July 2013 presumably to replace the trustee named in the May 2012 instrument. *Id.* ¶ 21, 24.

---

[2] The Court notes that the record in this case contains a Corrective Assignment of Deed of Trust, that bears on Plaintiffs' standing, which was submitted by Defendant BANA in its Motion for Summary Judgment. (Doc. 16). Plaintiffs did not respond to BANA's Motion, so the evidence was undisputed and established that BANA—not Countrywide—made the transfer to Fannie Mae. Doc. 31, Mem. Op. & Order 7. In deciding a Rule 12(c) Motion, however, only the content in the pleadings, exhibits attached to the pleadings or referenced by the pleadings, and facts that the district court takes judicial notice of may be considered. 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed.). Here, Fannie Mae and Seterus did not attach the Corrective Assignment of DOT to their pleadings or otherwise reference it. And BANA did not ask the Court to take judicial notice of the Corrective Assignment of DOT. So it was not mandatory for the Court to do so. *See* Fed. R. Evid. 201(c). When BANA's Motion was before the Court, the Court exercised its discretion and did not judicially notice the Corrective Assignment of DOT, and the Court declines to do so here as well. *Id.* Therefore, as it is not attached or judicially noticed, the Court declines to consider it in its analysis because of the limited nature of a Rule 12(c) Motion.

Plaintiffs allegedly made timely payments on the Note until late 2013, when Plaintiffs experienced financial hardship. *Id.* ¶ 14. Plaintiffs purportedly contacted Seterus to try to resolve their delinquency. *Id.* ¶ 25. Plaintiffs eventually executed a Loan Modification Agreement with Seterus in May 2015. *Id.* ¶ 26. Under this new Loan Modification Agreement, Plaintiffs assert that they tendered several payments to Seterus until they experienced another financial hardship and had to again contact Seterus to discuss ways to resolve their delinquency. *Id.* ¶ 27. After numerous purported conversations, Plaintiffs submitted another loan modification application. *Id.* ¶ 28–29. Seterus acknowledged that application, but allegedly noted that it was missing documents and maintained that a foreclosure sale was still possible. *Id.* ¶ 30. Seterus, however, went ahead with the foreclosure sale, asserts Plaintiff, and the Property was sold to Fannie Mae for $163,400 in July 2015. *Id.* ¶¶ 30–32.

 Fannie Mae then served Plaintiffs with a Complaint for Forcible Detainer with a trial date in October 2015. *Id.* ¶ 34. Plaintiffs filed their Original Petition in state court just days before Fannie Mae's case was scheduled for trial. *See generally id.* There Plaintiffs alleged the following causes of action against Fannie Mae and Seterus: (1) wrongful foreclosure; (2) common law fraud; (3) violations of Regulation O of Chapter 12 in the Code of Federal Regulations; (4) violations of the Fair Debt Collection Practices Act (FDCPA) and the Texas Debt Collection Practices Act (TDCPA); and (5) filing a false lien or claim. Doc. 1-1, Pls.' Compl. ¶¶ 38–61. Defendants timely removed to this Court in November 2015. *See* Doc. 1, Notice of Removal.

Fannie Mae and Seterus filed their Motion for Judgment on the Pleadings in June 2016. *See* Doc. 14. Plaintiffs did not file a Response. As such, the Motion is ripe for the Court's review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *see also* Fed. R. Civ. P. 7(a); 5C Charles Alan Wright et al., Federal Practice & Procedure § 1367 (internal footnotes omitted) ("Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim, or third-party answer normally will mark the close of the pleadings."). The pleadings in this case are closed and Fannie Mae and Seterus timely moved for judgment on the pleadings. *See* Docs. 1-1, Pls.' Compl.; 9, Fannie Mae and Seterus's Original Answer; and 14, Defs.' Mot. J. on Pleads. Thus, the Court may properly consider Defendants' Rule 12(c) challenge.

A motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). The standard for evaluating a Rule 12(c) motion is the same as the standard for evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The Court may look to "allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims." *Cox v. Cent. Insurex Agency, Inc.*, No. 3:11-cv-2267-B, 2012 WL 253882, at *2 (N.D. Tex. Jan 26, 2012) (citing *Causey v. Sewell Cadillac-*

*Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

The Court will first address Defendants' two arguments that effect all of Plaintiffs' claims, in particular, that: (1) Plaintiffs lack standing, and (2) the recorded Assignment of DOT is not the

operative document to be arguing over. Neither controls the outcome of this Motion. Thus, the Court will then turn to Defendants' attacks on the sufficiency of Plaintiffs' pleadings. In light of these attacks, the Court concludes that Plaintiffs failed to a claim on which relief may be granted.

A.   *Plaintiffs' Standing*

Defendants first argue that Plaintiffs lack standing to challenge the assignment of their mortgage because they are not parties to that assignment. Doc. 15, Defs.' Br. in Supp. of Mot. J. Pleads. ¶¶ 5–8 [hereinafter Defs.' Mot. J. Pleads.]. Defendants request that the Court dismiss all of Plaintiffs' claims that stem from their challenge to the assignment. *Id.* ¶ 8. Plaintiffs did not file a response.

Borrowers do have limited standing to challenge an assignment of their deed of trust even if they are not parties to the assignment. *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780–81 (5th Cir. 2015). Specifically, although "'the law is settled' in Texas that [a borrower] cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment voidable at the election of the assignor, Texas courts follow the majority rule that the [borrower] *may* defend 'on any ground which renders the assignment void.'" *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013) (quoting *Tri–Cities Const., Inc. v. Am. Nat. Ins. Col*, 523 S.W.2d 426, 430 (Tex. Civ. App. 1975)). Only void assignments may be challenged by borrowers because a void assignment would not pass title, and the borrower has an interest "to insure [sic] himself that he will not have to pay the same claim twice." *Holloway v. Wells Fargo Bank, N.A.*, 3:12-cv-2184-G-BH, 2013 WL 1187156, at *6 (N.D. Tex. Feb. 26, 2013) (quoting *Tri-Cities Const., Inc.*, 523 S.W.2d at 430).

One example of a challenge that would render the assignment merely voidable would be

where the challenge is based on enforcing specific contractual terms in the assignment agreement. *Reinagel*, 735 F.3d at 225; *Deutsche Bank Nat'l Trust Co. v. Burke*, 117 F. Supp. 3d 953, 959 (S.D. Tex. 2015). And when an assignment is merely voidable, only the assignor, not the borrower, may challenge it. *Burke*, 117 F. Supp. 3d at 959. A void assignment, by contrast, results in the event of a forgery or a gap in the chain of title. *Vazquez v. Deutsche Bank Nat'l Trust Co.*, 441 S.W.3d 783, 787 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Miller v. Homecomings Financial, LLC*, 881 F. Supp. 2d 825, 832 (S.D. Tex. 2012) (collecting cases). In that instance, the borrower himself can challenge the assignment. *See id.*

In their Complaint, Plaintiffs challenge the assignment by calling it "void" and "fraudulent on its face" because the initial Assignment of DOT listed Countrywide as the assignor, but Countrywide lacked the authority to assign the DOT to Fannie Mae. Doc. 1-1, Pls.' Compl. ¶ 17. If Plaintiffs are correct, then the assignment would be void because "Texas courts routinely allow a homeowner to challenge the chain of assignments by which a party claims the right to foreclose." *Miller*, 881 F. Supp. 2d at 832. This is because a gap in the chain of assignment indicates a failure to pass title, and the borrower would then have an interest to ensure he would not have to pay the same claim twice. *See Holloway*, 2013 WL 1187156, at *6.

Defendants argue that Plaintiffs' challenge is not one that would render the assignment void because Countrywide merged with BANA in 2009 and all of Countrywide's assets became BANA's assets. *See* Doc. 15, Defs.' Mot. J. Pleadings ¶¶ 7–15. *Id.* ¶ 7. Defendants reason that because of this merger, it doesn't matter if the Assignment of DOT bears Countrywide's name or BANA's because in effect, it was the same entity. *Id.* And if it was the same entity, then BANA assigned the DOT directly to Fannie Mae, and Plaintiffs' challenge fails. *Id.*

To support their position, Defendants cite to a case from the Southern District of Texas. Doc. 15, Defs.' Mot. J. Pleads. ¶ 7; *Wirsche v. Moncor, Inc.*, 7:12-cv-214, 2013 WL 127565, at *5 (S.D. Tex. Jan. 9, 2013). The court was faced with the task of determining the date on which a note was transferred from one entity to another. *See Wirsche*, 2013 WL 127565, at *5. The note was transferred from Countrywide to BANA but it was undated. *Id.* The court determined that because Countrywide merged into and was then operated as a part of BANA on April 27, 2009, at the very latest, the note was transferred on April 27, 2009. *Id.* Defendants assert that this case supports their position because it demonstrates that either BANA or Countrywide could have executed the assignment to Fannie Mae in 2011, and it would have had the practical effect of being assigned from BANA. *See* Doc. 15, Defs.' Mot. J. Pleads. ¶ 7.

Another case from this district also addresses the Countrywide–BANA merger. There, the court determined that the plaintiffs' claims against Countrywide would be considered as if they were also brought against BANA because of BANA's status as Countrywide's successor by merger. *Coleman v. Bank of N.Y. Mellon*, 3:12-cv-4783-M-BH, 2016 WL 898860, at *1 n.2 (N.D. Tex. Mar. 9, 2016). The Texas Business Organizations Code addresses mergers and provides that "all rights, title, and interests to all . . . property owned by each organization that is a party to the merger is allocated to and vested . . . in one or more of the surviving or new organizations as provided in the plan of the merger . . . ." Tex. Bus. Orgs. Code Ann. § 10.008(a)(2).

The cases and relevant statute indicate that any loans Countrywide came into the merger with in 2009 likely became BANA's Property. *See Wirsche*, 2013 WL 127565, at *5. But that is not what happened here—this was a post-merger assignment executed in Countrywide's name. And Defendants provide no authority or other support as to whether an assignment executed after the

merger, in Countrywide's name, would nonetheless be treated as if BANA itself had assigned the DOT. Resolving this dispute, then, will likely be more appropriate after the Court can consider evidence beyond the pleadings.

In any event, the Court need not decide whether Plaintiffs have standing to challenge the purportedly invalid assignment in order to consider the sufficiency of Plaintiffs' pleadings. A defendant's argument that a plaintiff cannot challenge the validity of an assignment to which he was not a party is a challenge to that plaintiff's statutory standing, and not his Article III standing. *Scott v. Bank of America, N.A.*, SA-12-cv-00917-DAE, 2013 WL 1821874, at *4 n.2 (W.D. Tex. Apr. 29, 2013) (citing *Blanchard 1986, Ltd. V. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008)). "A federal court may not bypass the question of Article III standing—which goes to the court's own jurisdiction—but may assume statutory standing in order to reach the merits of a case." *Saucedo v. Deutsche Bank Nat. Trust Co.*, SA-12-cv-00868-DAE, 2013 WL 656240, at *5 (W.D. Tex. Feb. 20, 2013) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 97, 118 (1998) (rejecting the practice of "assuming" standing for the purpose of deciding the merits, but distinguishing between statutory standing and Article III standing); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 339–40 (5th Cir. 2010) (noting that the court need not address statutory standing after it affirmed the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6)). Thus, assuming without deciding that Plaintiffs have standing to challenge the assignment, the Court concludes, as discussed below, that Plaintiffs have failed to state any claim upon which relief may be granted.

B.      *Recorded Assignment*

Defendants make a second argument with potential impact on all of Plaintiffs' claims by asserting that the recorded Assignment of DOT is not the operative document. Doc. 15, Defs.' Mot.

J. Pleads. ¶ 9. They reason that because the ability to foreclose on a deed of trust is transferred when the note is transferred, any argument by Plaintiff as to a flaw in the recorded DOT does not speak to the actual authority of Fannie Mae to foreclose. *Id.* Plaintiffs did not file a response. As Defendants do not point out any argument made by Plaintiffs where they argue flaws in the recorded Assignment of DOT, and because Plaintiffs fail to state a claim upon which relief may be granted as set forth below, the Court need not consider whether the Assignment of DOT is the operative document.

C.      *Wrongful Foreclosure*

Plaintiffs bring a wrongful foreclosure claim against both Fannie Mae and Seterus. Doc. 1-1, Pls.' Compl. ¶¶ 38–42. Plaintiffs' allegations rest on their theory that the DOT was wrongfully assigned without authority by Countrywide. *See id.* ¶ 39. Plaintiffs reason that Fannie Mae's completion of a foreclosure sale without the proper authority and proceeding with the sale even after Seterus had accepted Plaintiffs' second loan modification application constituted a material defect in the sale. *Id.* This resulted in a wrongful foreclosure, which allegedly led to a grossly inadequate sales price and caused damages. *Id.*

In Texas, to prevail on a claim of wrongful foreclosure, Plaintiffs are required to prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011) (quoting *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A grossly inadequate sales price is one "so little as 'to shock a correct mind, and thereby raise a presumption that fraud attended the purchase.'" *FDIC v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990) (citing *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex. Civ. App. 1932)).

Defendants argue that Plaintiffs failed to plead a claim on which relief can be granted because they failed to allege an inadequate sales price resulting from the alleged defects. Doc. 15, Defs.' Mot. J. Pleads. ¶ 10. Defendants also allege that challenging the foreclosure is premature because Plaintiffs have not yet been dispossessed of the Property. *Id.* ¶ 11. Plaintiffs did not file a response.

In Plaintiffs' allegation of wrongful foreclosure, they simply state that Defendants' actions "resulted in a grossly inadequate and/or unfair sales price . . . ." Doc. 1-1, Pls.' Compl. ¶ 39. Without more, Plaintiffs have simply restated the element with no factual detail with which the Court could reasonably infer that the sales price was inadequate. *See Iqbal*, 556 U.S. 678. Furthermore, in their Complaint Plaintiffs state that the Property was purchased by a loan in the principal amount of $ 142,900.00. *Id.* ¶ 13. Plaintiffs later state that at the foreclosure sale, the Property was sold for $ 163,400.00. *Id.* ¶ 32. From the two numbers provided, it appears that Fannie Mae sold the Property for more than the loan principal, and on the face of the Complaint, the Court cannot infer that the sale price was so low as to shock a correct mind. *See FDIC*, 918 F.2d at 530–31. Therefore, Plaintiffs failed to plead their wrongful foreclosure claim.

Even if Plaintiffs had adequately pled the elements of a wrongful foreclosure claim, they have not established that they can bring the claim because it does not appear that they have been deprived of possessing the Property. Recovery under wrongful foreclosure is premised on one's dispossession of real property, and individuals never losing possession of the property cannot recover on a theory of wrongful foreclosure. *Baker v. Countrywide Home Loans, Inc.*, 3:08-cv-0916-B, 2009 WL 1810336, at *4 (citing *Peterson v. Black*, 980 S.W.3d 818, 823 (Tex. App.—San Antonio 1998, no pet.)). In *Baker*, the Court found that even though foreclosure proceedings were commenced, the family maintained possession of their homestead, without paying their mortgage, throughout the pendency

of the lawsuit, and therefore could not bring a wrongful foreclosure claim. *Id.* at *4.

In their Complaint, Plaintiffs state that their present address is that of the Property at issue. Doc. 1-1, Pls.' Compl. ¶¶2–3. Therefore, as of the date of filing their Complaint, they continued to reside at the foreclosed Property. Therefore, it appears from the Complaint that Plaintiffs maintain their residence at the Property, and because Plaintiffs provide no argument to the contrary, the Court cannot infer that they are entitled to bring a wrongful foreclosure claim. Therefore, the Court **GRANTS** Defendants' Motion as to the wrongful foreclosure claim and **DISMISSES** it **without prejudice.**

D.   *Regulation O*

In their Complaint, Plaintiffs allege that Defendant Seterus violated Regulation O of 12 C.F.R. § 1015. Doc.1-1, Pls.' Compl. ¶¶ 49–52. Plaintiffs argue that Seterus, acting as a "mortgage assistance relief servicer," violated Regulation O by making misrepresentations of material fact to Plaintiffs. *Id.* ¶ 50. The misrepresentation allegedly stemmed from Seterus modifying Plaintiffs' mortgage loan and accepting Plaintiffs' payments under the modified loan when Seterus had no lawful authority to take such actions. *Id.* ¶ 51. Plaintiffs reason that Seterus lacked authority because it was acting on behalf of Fannie Mae, that never had an interest in Plaintiffs' loan because the Assignment of DOT to Fannie Mae was void. *Id.*

Defendants argue that Plaintiffs cannot bring a claim against Seterus under § 1015 because Seterus is not a "mortgage assistance relief service provider" (MARS provider) as defined by the regulation. Doc. 15, Defs.' Mot. J. Pleads. ¶ 14. Defendants further argue that Fannie Mae and Seterus are specifically excluded from the definition of a MARS provider. *Id.* ¶ 16. Defendants argue in the alternative that there is no private right of action under § 1015.3. *Id.* ¶ 17. Plaintiffs did not

file a response.

Section 1015.2 of the Code of Federal Regulation defines a MARS provider as follows:

any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service. This term does not include:

(1) The dwelling loan holder, or any agent or contractor of such individual entity.

(2) The servicer of a dwelling loan, or any agent or contractor of such individual or entity.

12 C.F.R. § 1015.2. If the parties had agreed that Fannie Mae was the "dwelling loan holder" and that Seterus was the "servicer," then Defendants' argument would be persuasive. There is, however, a disagreement over which entity is the loan holder, so without deciding which entity holds the loan, the Court cannot determine that Plaintiffs fail to state a claim using the definition of a MARS provider.

In the alternative, Defendants argue that there is no private right of action provided under § 1015.3. The proper inquiry to determine whether there is a private right of action is to determine whether the corresponding statute created a private cause of action or authorized the rule-making agency to do so. *Cases v. Am. Airlines, Inc.*, 304 F.3d 517, 520 (5th Cir. 2002) (citing *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001)). This is because "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not . . . ." *Sandoval*, 532 U.S. at 291. Defendants fail to cite to any case where a court engaged in the analysis and concluded that there is no private right of action under Regulation O. The Court need not conduct the analysis itself, however, because Plaintiffs nonetheless fail to adequately plead a violation of it.

Assuming that Seterus is a MARS provider and assuming that there is a private right of action, Plaintiffs fail to allege facts from which the Court could infer a violation under Regulation O. *See Iqbal*, 556 U.S. at 678. In their Complaint, Plaintiffs specifically allege that Defendants violated four of Regulation O's listed examples of prohibited misrepresentations made by MARS providers. Doc. 1-1, Pls.' Compl. ¶ 51. The first, § 1015.3(b)(2), prohibits misrepresentations regarding the amount of time it will take for the MARS provider to accomplish any represented service or result. Plaintiffs do not allege that Seterus made any representation regarding timing. The second example listed, § 1015.3(b)(5), prohibits misrepresentations as to the terms or conditions of the loan, including but not limited to the amount of debt owed. Plaintiffs fail to allege that Seterus made any representation regarding the terms of the loan or the amount Plaintiffs owed. The third example, § 1015.3(b)(6), prohibits misrepresentations regarding the terms or conditions of any refund, cancellation, or repurchase policy for the MARS provider's service. Plaintiffs do not allege that they even retained Seterus's service. Rather, Plaintiffs recognize that Seterus acted on behalf of Fannie Mae. Doc. 1-1, Pls.' Compl. ¶ 50. Therefore, the Court cannot infer that Seterus made a misrepresentation about refunding a policy purchased by Plaintiffs when no such purchase was made. The last misrepresentation Plaintiffs allege is under § 1015.3(b)(7), which prohibits misrepresentations about whether a MARS provider's services are complete and a provider's right to claim, demand, charge, collect, or receive payment or other consideration. As previously discussed, Plaintiffs did not retain Seterus's service, Fannie Mae did, so Plaintiffs' allegations do not allow the Court to reasonably infer that Seterus ever represented to Plaintiffs that it had completed a service owed to Plaintiffs.

In light of the fact that Plaintiffs failed to allege facts from which the Court could reasonably

infer Seterus violated Regulation O, the Court **GRANTS** Defendants' Motion with regard to Plaintiffs' claims under Regulation O and **DISMISSES** them **without prejudice**.

E.      *Texas Debt Collection Practices Act and Fair Debt Collection Practices Act*

Plaintiffs bring a cause of action against Seterus under both the TDCPA and the FDCPA. Doc. 1-1, Pls.' Compl. ¶¶ 53–56. Plaintiffs argue that Seterus violated both statutes when it allegedly held itself out as the loan servicer for Fannie Mae, accepted Plaintiffs' application for another loan modification but proceeded with a foreclosure sale instead of reviewing the new application, and engaged in efforts to evict Plaintiffs. *Id.* ¶ 54. Plaintiffs reason that this list of actions constituted a misrepresentation of the character, amount, or extent of the indebtedness to be collected. *Id.* Furthermore, Plaintiffs allege that Seterus is a "third-party debt collector" and breached the duties that go along with that title by "engaging in false, deceptive, and/or misleading acts or conduct when communicating with Plaintiffs . . . ." *Id.* ¶ 55. The Court first addresses Plaintiffs' allegations under the TDCPA and then turns to the FDCPA.

1.      Texas Debt Collection Practices Act

As a preliminary matter, Plaintiffs fail to specify which sections of the TDCPA they bring their claims under. In Plaintiffs' Complaint, they cite to Texas Finance Code sections "392.001 et seq." and "392.301 et seq." Doc. 1-1, Pls.' Compl. ¶¶ 54–55. As it is unlikely that Plaintiffs intended to bring claims under every section of the TDCPA, the Court construes their Complaint in the light most favorable to them and considers their claims under § 392.301(a)(5) and § 392.301(a)(8). The Court narrowed Plaintiff's Complaint to these two sections by using Plaintiffs' more specific reference to § 392.301 as a guide. Section 392.301(a)(5) is relevant because of Plaintiffs' reference to a "third-party debt collector" and § 392.301(a)(8) is relevant because Plaintiffs appear to paraphrase it in

their Complaint.

Section 392.304(a)(5) addresses communications between third-party debt collectors and borrowers. Specifically, it prohibits a "third-party debt collector" from "failing to disclose" (1) "that the communication [with the borrower] is an attempt to collect a debt and that any information obtained will be used for that purpose" if the communication is the initial written or oral communication, or (2) "that the communication is from a debt collector" if the communication is a subsequent written or oral communication. Tex. Fin. Code Ann. § 392.304(a)(5). A third-party debt collector is a "debt collector" as defined under the FDCPA,[3] but it does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client. Tex. Fin. Code Ann. § 392.001(7).

The Court concludes that Plaintiffs fail to allege facts sufficient for the Court to infer that Seterus violated this provision. Plaintiffs simply state that Seterus is a third-party debt collector without giving any support as to why. Furthermore, Plaintiffs fail to describe any communication made by Seterus to Plaintiffs other than asserting that Seterus breached a duty by engaging in misleading acts "when communicating with the Plaintiffs . . . ." *Id.* ¶ 55. Therefore, to the extent Plaintiffs intended to bring a claim under § 392.301(a)(5), the Court **DISMISSES** it **without prejudice**.

Section 392.304(a)(8) prohibits a "debt collector" from using "a fraudulent, deceptive, or misleading representation that employs . . . misrepresenting the character, extent, or amount of a

---

[3] A "debt collector" under the FDCPA is "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a.

consumer debt . . . ." Tex. Fin. Code Ann. § 392.304(a)(8). A "debt collector" under the TDCPA is "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." Tex. Fin. Code Ann. § 392.001(6). "Debt collection" means an "action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code Ann. § 392.001(5).

From the Complaint, it appears that Plaintiffs stated that Seterus acted as a "debt collector" as defined by the statute[4] because they state Seterus engaged in "collecting and demanding payments" with regard to Plaintiffs' defaulted loan. Doc. 1-1, Pls.' Compl. ¶ 54. Plaintiffs nonetheless fail to plead this claim because they provide no facts indicating that Seterus ever gave Plaintiffs a false impression of the amount of debt owed or the character of Plaintiffs' debt. Indeed, all Plaintiffs allege is that Seterus misrepresented the "character, amount or extent of the indebtedness to be collected." Doc. 1-1, Pls.' Compl. ¶ 54. Plaintiffs provide merely a recitation of the elements without any facts from which the Court could reasonably infer Seterus violated the statute. *See Iqbal*, 556 U.S. at 678. As such, the Court **GRANTS** Defendants' Motion as to the TDCPA claims and **DISMISSES** them **without prejudice**.

### 2.   Federal Fair Debt Collection Practices Act

Similar to their allegations under the TDCPA, Plaintiffs fail to point to a specific section of the FDCPA that they allege Seterus violated. Defendants do not attempt to guess which section

---

[4] Unlike under the FDCPA, as discussed below, mortgage servicers are considered debt collectors under the TDCPA and are therefore subject to the provisions of the statute. *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013).

Plaintiffs intended to reference and instead argue that Plaintiffs cannot bring a claim under the FDCPA because Seterus is not a "debt collector" as defined by the statute. Doc. 15, Defs.' Mot. J. Pleads. ¶ 25–26. Plaintiffs did not file a response.

The FDCPA defines a debt collector as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

As discussed by the Fifth Circuit, "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95-382, 95th Cong., 1st Sess., at 3 (1977)). Defendants argue that Seterus conclusively falls outside the definition of "debt collector" because it is a mortgage servicing company and because Fannie Mae acquired the loan in 2013, before Plaintiffs were in default. Doc. 15, Defs.' Mot. J. Pleads. ¶ 23. Defendants, however, presuppose that the assignment to Fannie Mae was valid in 2013, a point that is still in dispute. While Plaintiffs do not contest that they were in default beginning in 2013, they do dispute that Fannie Mae actually acquired their loan. Therefore, there is an unresolved factual dispute over when, if ever, the assignment was made to Fannie Mae. While it is likely that Seterus would not be considered a debt collector if Fannie Mae acquired the loan in 2013 before Plaintiffs were in default, the Court cannot conclude that Plaintiffs' FDCPA claim fails for this reason because the transfer is

in dispute and Seterus's status as a debt collector is unclear.

Even if Seterus fell under the definition of "debt collector," however, Plaintiffs still fail to state a claim on which relief can be granted. Plaintiffs cite to the FDCPA as a whole in that they state Seterus violated "§ 1601 et seq." Plaintiffs' allegations are so vague that the Court cannot guess which section of the FDCPA Plaintiffs intend to bring their claims under. Furthermore, § 1601 cannot be used as a guide to determine what other sections Plaintiffs may refer to because it is the Congressional Findings and Declaration of Purpose section of the subchapter on Consumer Credit Cost Disclosure; the FDCPA is codified in a completely different subchapter. *Compare* 15 U.S.C. § 1601 *with* 15 U.S.C. § 1692. Without more, the Court cannot determine if Plaintiffs have alleged enough facts from which the Court can infer a violation. *See Iqbal*, 556 U.S. at 678. Thus, the Court **GRANTS** Defendants' Motion as to the FDCPA claims and **DISMISSES** them **without prejudice**.

F.    *Common Law Fraud and Misrepresentation*

Plaintiffs bring a common law fraud and misrepresentation claim against both Fannie Mae and Seterus. Doc. 1-1, Pls.' Compl. ¶¶ 43–48. Under Texas law, the elements of common law fraud are: "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Plaintiffs' state-law fraud claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010). Rule 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud or

mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Sullivan*, 600 F.3d at 551 (citing *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). Essentially, the plaintiff must set out "the who, what, when, where, and how" of the fraud. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 179 (5th Cir. 1997)).

Plaintiffs are not clear on what they believe are fraudulent statements. In their Complaint, Plaintiffs first recite several elements of a common law fraud claim. Doc. 1-1, Pls.' Compl. ¶ 45. Plaintiffs then turn to the Assignment of DOT as a basis for their fraud claim. *Id.* ¶ 46. Plaintiffs repeat their contention that the Assignment of DOT is invalid because it bears Countrywide's name. *Id.* ¶ 46. From that contention, they determine that the Assignment was "fraudulent" and Defendants' actions based on that fraudulent Assignment constitute "false representations of material fact which Plaintiffs relied upon to their detriment . . . ." *Id.* ¶ 46. Plaintiffs do not allege that Seterus or Fannie Mae made any fraudulent statements to Plaintiffs. They then turn to the two Appointments of Substitute Trustees. *Id.* ¶ 47. Plaintiffs argue that the Appointments were signed by "robo-signors" and were therefore fraudulent or forged. *Id.* They reason that fraudulent or forged Appointments constitute common law fraud and misrepresentation. *Id.*

Defendants reassert their standing argument because the fraud claim is based on an invalid assignment, and in the alternative, Defendants argue that Plaintiffs failed to allege any facts that could possibly establish that any representation made by Defendants in the assignment was false, that Plaintiffs relied on any statements made by Defendants, or that Plaintiffs suffered any injuries. Doc.

15, Defs.' Mot. J. Pleads. ¶¶ 28–29. Plaintiffs did not file a response. As discussed above, the Court need not resolve the standing issue, so the Court will consider Defendants' argument that Plaintiffs failed to allege facts from which the Court could infer Defendants' engaged in common-law fraud.

Plaintiffs' allegations that Defendants made misrepresentations by acting on an allegedly invalid Assignment lack the necessary specificity to satisfy the Rule 9(b) heightened pleadings standard. Such allegations fail to identify the contents, timing, or circumstances surrounding any statement made by Seterus or Fannie Mae, and therefore do not set out those facts that the Fifth Circuit has indicated are necessary to reach the level of particularity that is required under Rule 9(b). *See Sullivan*, 600 F.3d at 551. Furthermore, Plaintiffs fail to point to a specific speaker. Besides failing to adequately plead under the heightened standard, Plaintiffs fail to allege facts from which the Court could infer Plaintiffs relied on any misrepresentation to their detriment, a required element under the state law cause of action. *See Flaherty*, 565 F.3d at 212.

Plaintiffs' allegations regarding the Appointments of Trustees have the same deficiencies as discussed above; Plaintiffs fail to identify a speaker, they fail to identify a statement, they fail to identify when or how any statement was made. And they fail to specify how they relied on any alleged statement. As Plaintiffs have failed to include necessary facts for pleading a fraud claim, the Court **GRANTS** Defendants' Motion as to Plaintiffs' fraud and misrepresentation claim and **DISMISSES** it **without prejudice**.

G.     *Civil Practice and Remedies Code § 12.002*

Plaintiffs bring a claim against Fannie Mae and Seterus under Chapter 12 of the Texas Civil Practices and Remedies Code. Doc. 1-1, Pls.' Compl. ¶¶ 57–61. They argue that by filing the Assignment of DOT with Countrywide's name on it, and by later filing the Appointments of

Substitute Trustees, Defendants filed a false lien or claim in violation of § 12.002.[5] *Id.* ¶ 58. Plaintiffs also call into question the authenticity and validity of the Assignment of DOT and both Appointments of Substitute Trustees by deeming them forged, false, and fraudulent, and argue this, too, constitutes filing a false claim or lien in violation of § 12.002. *Id.* ¶ 59.

> To state a claim under § 12.002, a plaintiff must plead facts showing that the defendant:
>
> (1) made, presented, or used a document with knowledge that it was a fraudulent lien or claim against real or personal property or an interest in real or personal property, (2) intended that the document be given legal effect, and (3) intended to cause the plaintiff physical injury, financial injury, or mental anguish.

*Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 783 (5th Cir. 2015) (citations omitted).

Defendants argue that the Court should dismiss Plaintiffs' claim under § 12.002 because assigning an interest in a deed of trust does not create a lien or claim as required by the statute's "fraudulent lien" language. Doc. 15, Defs.' Mot. J. Pleads. ¶ 30. Defendants cite to a case from the Eastern District of Texas and argue that the "[f]ederal district courts have found that, because an assignment merely transfers an existing deed of trust, it does not create a lien or claim on real property and, therefore, section 12.002 is inapplicable." *Id.* ¶ 30. The case to which Defendants refer relies on several opinions from the Eastern and Western Districts of Texas to conclude that assignments do not fall under the statute because they do not create a lien. *Scher v. Deutsche Bank Trust Co. Americas*, 4:13-cv-203, 2014 WL 11514689, at *5 (E.D. Tex. Feb. 25, 2014). The court further determined that the plaintiffs failed to sufficiently state how the assignment at issue would

---

[5] While Plaintiffs actually cite to "§ 12.001 et seq." it appears to the Court that Plaintiffs intended to bring a claim under § 12.002 specifically, so the Court will construe Plaintiffs' Complaint as such. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (noting that pleadings should be construed liberally when considering a Rule 12(c) motion).

create a lien against the property. *Id.*

Defendants' Eastern District case is not conclusive, however. The Fifth Circuit recently noted that courts are not uniform in their application of § 12.002 because some hold that the statute requires a plaintiff to plead facts showing the defendant used an instrument purporting to create a fraudulent lien, but other courts do not require the *creation* of a lien. *Ferguson*, 802 F.3d at 783 n.11. Due to the split in authority, the Fifth Circuit avoided weighing in on the split, and ruled on an alternative ground instead. *Id.* The Southern District of Texas has followed its lead. *Bonilla v. Wells Fargo Bank, N.A.*, H-15-3412, 2016 WL 5661706, at *3 n.22 (S.D. Tex. Sept. 29, 2016). This Court will do the same, and thus sets aside the issue of whether the "fraudulent lien" language encompasses fraudulent assignments.

Here, regardless of whether the Assignment of DOT or the Appointments fall under the statute, Plaintiffs have nonetheless failed to plead a claim on which relief may be granted. Most strikingly absent is Plaintiffs' failure to plead that Defendants' actions intended to cause Plaintiffs physical injury, financial injury, or mental anguish. Plaintiffs simply state that Defendants' actions caused them "actual damages" but they fail to specify what those damages are. *See* Doc.1-1, Pls.' Compl. ¶ 60. Furthermore, Plaintiffs have pleaded no facts, beyond naked assertions to show that Defendants knew the Assignment of DOT or the Appointments were fraudulent. As a result of this insufficiency, the Court cannot infer that Defendants violated § 12.002. Therefore, the Court **GRANTS** Defendants' Motion as to the § 12.002 claim and **DISMISSES** it **without prejudice**.

H.    *Equitable Relief*

Plaintiffs request an accounting, injunctive relief, and a declaratory judgment. Doc. 1-1, Pls.' Compl. ¶¶ 37, 40–41. The Court addresses each request separately below.

1.    Accounting

Plaintiffs request an accounting from Defendant Rick Snoke. Doc. 1-1, Pls.' Compl. ¶ 41. Snoke was the Substitute Trustee appointed either by Seterus or Fannie Mae. *See id.* ¶¶ 7, 21, 23. The Court dismissed Snoke from the case in August 2016. Doc. 19, Order. While Plaintiffs explicitly request an accounting from Snoke alone, he is no longer a party in the case, so the Court will consider Plaintiffs' request in light of the remaining Defendants.

"An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Brown v. Cooley Enters., Inc.*, No. 3:11-cv-0124-D, 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011). Plaintiffs have only asserted a right to an accounting, so it is unclear whether Plaintiffs intend their request as a suit in equity or a remedy. If Plaintiffs seek an accounting as a remedy rather than a cause of action, the Court cannot determine whether it is an appropriate remedy until liability is determined. *Peters v. JP Morgan Chase Bank, N.A.*, 600 F. App'x 220, 225 (5th Cir. 2015).

If Plaintiffs seek an accounting as a separate, equitable cause of action, an accounting can be appropriate when "the facts and accounts presented are so complex [that] adequate relief may not be obtained at law." *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 243 (5th Cir. 2014) (quoting *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)). But "[w]hen a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting." *T.F.W. Mgmt.*, 79 S.W.3d at 717–18. Plaintiffs simply assert that they demand an accounting, but they fail to allege that they are unable to obtain pertinent information through ordinary discovery procedures. *See* Doc. 1-1, Pls.'

Compl. ¶ 41. Thus, their claim does not meet the standard of plausibility required. *See Iqbal*, 556 U.S. at 678. The Court **GRANTS** Defendants' Motion as to Plaintiffs' accounting claim and **DISMISSES** it **without prejudice**.

> 2.    Injunctive Relief

Plaintiffs also request a temporary injunction to stop Defendant Fannie Mae from evicting Plaintiffs from the Property until all claims are fully adjudicated. Doc. 1-1, Pls.' Compl. ¶¶ 36–37. Defendants argue that the Court should deny Plaintiffs' request for injunctive relief because Plaintiffs have failed to demonstrate a likelihood of success on the merits of their claims. Doc. 15, Defs.' Mot. J. Pleads. ¶ 34.

To obtain a preliminary injunction, Plaintiffs must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm for which they have no adequate remedy at law; (3) that greater injury will result from denying the preliminary injunction than from its being granted; and (4) that a preliminary injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). To establish a "substantial likelihood of success on the merits," Plaintiffs' proof need not meet the standard required for summary judgment. *Id.* at 595–96. Rather , the party need only present a *prima facie* case. *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011) (citing 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.3 (2d ed. 1995)). Ordinarily, it will be enough if the plaintiff raises questions going to the merits "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* (quoting *Sebastian v. Texas Dep't of Corrections*, 541 F. Supp. 970, 975 (S.D. Tex. 1982)).

Plaintiffs' request for injunctive relief fails because they fail to demonstrate a substantial likelihood of success on the merits. Because the Court has already disposed of all of Plaintiffs' claims, they cannot show *any* likelihood of success on the merits, much less a substantial one. The Court therefore **DENIES without prejudice** the request for a preliminary injunction.[6]

    <u>3.</u>    <u>Declaratory Relief</u>

Plaintiffs seek a declaratory judgment from the Court voiding the Substitute Trustee's Deed, which conveyed the Property to Fannie Mae following the foreclosure sale. Doc. 1-1, Pls.' Compl. ¶ 40; *see* Doc. 1-1, Substitute Trustee's Deed, Ex. J. Defendants seek to dismiss Plaintiffs' request for a declaratory judgment. Doc. 15, Defs.' Mot. J. Pleads. ¶ 34. While they title a section of their brief as "Plaintiffs' Declaratory Judgment claim fails," they argue only that injunctive relief would be improper and fail to address declaratory relief at all. *See id.* Plaintiffs filed no response.

As an initial matter, Plaintiffs state in their Complaint that they seek declaratory relief under the Texas Declaratory Judgment Act, but "[w]hen a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act." *Redwood Resort Props., LLC v. Homes Co., Ltd.*, No. 3:06-CV-1022-D, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) (citing *i2 Techs. US, Inc. v. Lanell*, 3:02-CV-0134-G, 2002 WL 1461929, at *7 n.5 (N.D. Tex. July 2, 2002)). The Court therefore analyzes Plaintiffs' claim under the federal Declaratory Judgment Act (DJA).

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court

---

[6] Plaintiffs' Complaint also contains a request for a Temporary Restraining Order. Doc. 1-1, Pls.' Compl. ¶ 36. The state court, however, issued a temporary restraining order in October 2015. Doc. 1-1, Temporary Restraining Order, Ex. B-2. Therefore, the Court did not consider Plaintiffs' request for one in deciding this Motion.

of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The requirement of an "actual controversy" derives from the prohibition against federal courts issuing advisory opinions. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

The declaration Plaintiffs seek appears entirely derived from their other claims. Specifically, the request for a declaratory judgment is within the same section in which Plaintiffs bring their wrongful foreclosure claim. *See* Doc. 1-1, Pls.' Compl. ¶¶ 38–42. Because the Court has already found that Plaintiffs failed to state a wrongful foreclosure claim, there is no longer a "substantial controversy . . . of sufficient immediacy" to warrant a declaratory judgment based on the same arguments. *See Vantage Trailers*, 567 F.3d at 748. To the extent that Plaintiffs' request relies on arguments besides those connected with the wrongful foreclosure claim, the Court has dismissed all of Plaintiffs' claims, so regardless of what Plaintiffs base their request on, there does not appear to be a "substantial controversy." *See id.* Therefore, the Court **GRANTS** Defendants' Motion as to the declaratory judgment request and **DISMISSES** it **without prejudice**.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings (Doc. 14). Plaintiffs' claims are **DISMISSED without prejudice**, and the Court gives

Plaintiffs an opportunity to replead.[7] Their Amended Complaint is due by March 24, 2017.


       **SO ORDERED.**

       **SIGNED: February 22, 2017.**

                             _____

                             JANE J. BOYLE
                             UNITED STATES DISTRICT JUDGE

---

[7] Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.") Here, Plaintiffs failed to plead each of their claims with sufficient factual specificity. Given that this is the Court's first review of their pleadings, it is proper to grant Plaintiffs leave to amend their Complaint, if they can do so in a way that overcomes the deficiencies identified in this Order.